OPINION
Plaintiff-appellant Louann Lawson appeals from a summary judgment rendered against her on her claim for sexual harassment against her employer. She contends that the trial court erred in rendering summary judgment for her employer, because there is evidence from which a reasonable mind could find that she was sexually harassed.
We conclude that the trial court did not err in rendering summary judgment because some of the behavior of which Lawson complains did not appear to have been based upon her gender, and the conduct that might reasonably be viewed as gender-based was not sufficiently severe and pervasive to be deemed as having adversely affected her employment conditions. Accordingly, the judgment of the trial court is Affirmed.
 I
Defendant-appellee James Yost is the President and owner of National Carton Coating Company (NCC). Lawson began her employment with NCC in October, 1988, as a general laborer. She was promoted to feeder tender in the printing department in 1995. Lawson resigned from her employment effective May 15, 1998.
According to her deposition testimony, in 1990, Yost called Lawson a "dumb ass" and a "motherfucker" in front of other employees. She testified that after that, the male employees would then laugh at her and bark at her "like dogs." Lawson testified that Yost laughed at her when she complained to him about the behavior of the male employees. She also testified that Yost did not curse at male employees. In a later affidavit submitted in response to the motion for summary judgment filed by Yost and NCC, Lawson claimed that Yost "frequently" cursed at her and called her names.
Additionally, Lawson testified that Yost also required her to clean the men's and women's restrooms, and that no men on her shift were required to do so.
Lawson also testified to a 1992 incident involving Yost who was handing out holiday turkeys to the employees. Lawson contends that when she got to the front of the line, Yost pushed her and told her to "get [her] ass in the back of the line," and that he did the same a second time when she made her way back up in the line.
In March of 1997, according to her testimony, Lawson was assaulted by a co-worker, Carpenter, who choked her and hit her in the head. Lawson testified that a short time thereafter, Yost remarked to her, "Have you heard of the Boston Strangler, well we have the Boston Stranglee." Lawson stated that Yost then began to laugh. She testified that the remark caused her to be "visibly upset" and to feel humiliated and intimidated. The record indicates that, following the assault, Carpenter was suspended without pay, and that his employment was terminated when he was convicted in connection with this assault.
Additionally, in March 1997, another male employee, Simmons, while drunk, placed his hands around Lawson's throat, imitating the previous attack. The record indicates that Lawson did not file a complaint until the same employee repeated the behavior in July of that year. She testified that she did not know what action was taken against Simmons by the company. Following the second incident, Lawson was off work on a workers' compensation claim and did not return to work prior to her resignation in 1998.
In her deposition, Lawson testified that she was never terminated or demoted. She further testified that she experienced no reduction in her benefits or wages, and that no adverse actions were taken at work. She also testified that the harassment did not prevent her from performing her job. However, in her affidavit, filed in response to the motion for summary judgment filed by Yost and NCC, Lawson averred that she was denied vacation time in 1996. She averred that the vacation request was denied, and that Yost laughed at her and told her she would have to give him two weeks notice even before she died. She also averred that she was not given the opportunity to move from her classified job to general labor and that men were permitted to do so much more than women.
Lawson filed a complaint against Yost, NCC, Carpenter and Simmons on September 30, 1997. Of relevance to this appeal, the lawsuit alleged that Yost and NCC had violated R.C. 4112.02 by subjecting her to a sexually hostile work environment. The matter was referred to arbitration. An arbitration panel found in favor of Yost and NCC. Lawson filed an appeal of that decision, de novo, to the common pleas court. Thereafter, Yost and NCC filed a motion for summary judgment.
On June 23, 2000, the trial court decided Yost's and NCC's motion for summary judgment favorably to them. However, since Lawson's claims against Carpenter and Simmons were still pending, a final judgment entry was not filed rendering judgment. In March, 2001, the trial court rendered summary judgment in favor of Lawson against Carpenter and Simmons. A final judgment was entered solely with regard to Carpenter and Simmons. Lawson filed a timely notice of appeal following the entry of that final order. This court, sua sponte, issued an order staying this appeal and remanding the cause for the entry of a final judgment with regard to Yost and NCC. Judgment was rendered on December 11, 2001.
 II
For her sole Assignment of Error, Lawson asserts the following:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
Lawson contends that the trial court inappropriately rendered summary judgment in favor of Yost and NCC.
Our review of the appropriateness of summary judgment is de novo. The standard of review in summary judgment cases is well-established. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370.
R.C. 4112.02(A) makes it an unlawful discriminatory practice for "any employer, because of the * * * sex * * * of any person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." An employee "may establish a violation of R.C. 4112.02(A)'s prohibition of discrimination "because of * * * sex" by proving either of two types of sexual harassment: (1) "quid pro quo" harassment, i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit; or (2) "hostile environment" harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment." Hampel v. Food Ingredients Specialties, Inc. (2000), 89 Ohio St.3d 169, 176.
As previously noted, Lawson's complaint was based upon her allegations of "hostile environment harassment." "In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show: (1) that the harassment was unwelcome; (2) that the harassment was based on sex; (3) that the harassing conduct was sufficiently severe or pervasive to affect the `terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment'; and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." Id., at 176-177.
We turn first to the requirement that the alleged harassment must be based on sex. "Harassment `because of * * * sex' is the sine qua non for any sexual harassment case." Hampel, supra, at 178. "* * *[T]he term `sexual, as used to modify harassment, `can refer both to sex as the immutable gender characteristic and to sex as describing a range of behaviors associated with libidinal gratification." Id., citing 3 Larson, Employment Discrimination (2 Ed. 2000) 46-34, Section 46.03[4]. Thus, harassment based on sex does not have to be explicitly sexual in nature. Id.
In determining whether the complained of behavior was severe or pervasive, all of the alleged incidents must be examined together, rather than as separate, distinct incidents. Hampel, supra, at 180-181. A reviewing court or trier of fact must look at all of the circumstances.Id., at 180, citation omitted. "These [circumstances] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance."Id., at 180, citation omitted. "* * *[I]n order to determine whether the harassing conduct was `severe or pervasive' enough to affect the conditions of the plaintiff's employment, the trier of fact, or the reviewing court, must view the work environment as a whole and consider the totality of all the facts and surrounding circumstances, including the cumulative effect of all episodes of sexual or other abusive treatment." Id., at 181. Additionally, "[t]he circumstances must be judged under both an objective and a subjective standard, i.e., the harassment must be severe or pervasive enough to create a work environment that a reasonable person would perceive as hostile or abusive and as altering the terms or conditions of employment, and the plaintiff must subjectively regard his work environment as hostile or abusive and so altered." Bucher v. Sibcy Cline, Inc. (2000), 137 Ohio App.3d 230,245, citations omitted.
In this case, Lawson was employed with NCC over a period of almost ten years. During that time, she was subjected to three physical assaults by two co-workers. While the three attacks by Carpenter and Simmons certainly may be considered severe, there is no evidence to indicate that they were based on sex. Additionally, it appears from the record that the assaults were not condoned by the company. Furthermore, it is clear that the company suspended, and later fired, Carpenter for his conduct. It also appears that the company took action when it was informed of the attacks by Simmons.
Lawson was also required to clean the bathrooms as part of her job duties. However, the record before us indicates that other workers were also required to do so, and that the requirement was not based on sex. It further indicates that when Lawson informed Yost that she did not wish to clean bathrooms, he transferred the duty to someone else.
We cannot say that the laughing and barking by the male employees was based on sex. While such behavior may be offensive and rude, the scope of R.C. 4112 does not extend to mere rudeness in the workplace.
With regard to the 1992 incident during the holiday turkey hand-out, we again find nothing in the record to indicate that Yost's behavior toward Lawson was based on her sex.
The only behavior that is alleged to have occurred throughout the entire span of Lawson's employment is Yost's cursing and name-calling. While Lawson's deposition testimony would imply that this occurred only in 1990, her affidavit states that it occurred "many times" and "often." On the record before us, we cannot say that this behavior was based on Lawson's sex, as opposed to Yost's personal animosity to her. Not all personal animosity is gender-based. Also, we cannot say that the behavior was severe or pervasive enough to affect the terms of Lawson's employment.
Lawson was promoted during the course of her employment. Furthermore, other than the claim that she did not receive one requested vacation and that she was not permitted to return to general labor after her promotion, Lawson can point to no adverse effects on her employment. With regard to the vacation denial, there is no evidence to demonstrate that it was based upon anything other than a lack of adequate notice to the company. While at first glance it might appear that the company's failure to provide a demotion back to general labor cannot be considered an adverse effect we note that a closer review reveals that Lawson contends that during her time off for a workers' compensation claim she wanted, and was able, to return to the general labor position, but that the company would not permit her to do so. However, there is evidence in the record to indicate that her ability to return to any type of work was disputed. We conclude that these two isolated events, both of which appear to be based on reasons other than Lawson's gender, are not the type of adverse effects contemplated by the sexual harassment laws.
Looking at the totality of the circumstances, and all of the instances of harassment together, we cannot say that the harassing conduct was based on sex. Likewise, we cannot say that it was sufficiently severe or pervasive to be deemed to have affected Lawson's employment. Accordingly, we find that the trial court did not err in rendering summary judgment in favor of Yost and NCC.
 III
Lawson's sole Assignment of Error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and YOUNG, J., concur.